UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTAL LYNN HAESEL,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 13-cv-05511 BHS<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: May 23, 2014 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 11, 12, 13).

After considering and reviewing the record, the Court finds the ALJ failed to provide clear and convincing reasons for discounting the opinions of Kristi Breen Ph.D.

and Rachelle C. Langhofer, Ph.D.  Plaintiff's limitations from mental impairments require further evaluation.

Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration.

## BACKGROUND

Plaintiff, CHRISTAL LYNN HAESEL, was born in 1972 and was 37 years old on the alleged date of disability onset of July 9, 2010 (*see* Tr. 20, 183, 189). Plaintiff completed college and then completed a two year degree in culinary arts (Tr. 34-35). Plaintiff has work experience as an executive chef and in retail and preschool management (Tr. 20, 35, 205).

Plaintiff has at least the severe impairments of "post-traumatic stress disorder ("PTSD") and bipolar disorder (20 CFR 404.1520(c) and 416.920(c))" (Tr. 15).

At the time of the hearing, plaintiff was living in an apartment (Tr. 33).

## PROCEDURAL HISTORY

On September 10, 2010, plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act (*see* Tr. 183-88, 189-90). The applications were denied initially and following reconsideration (Tr. 120-28). Plaintiff's requested hearing was held before Administrative Law Judge Rebekah Ross ("the ALJ") on September 12, 2011 (*see* Tr. 27-69). On September 20, 2011, the ALJ issued a written decision in which the ALJ

concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.10-26).

On May 2, 2013, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in June, 2013 (*see* ECF No. 1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on September 4, 2013 (*see* ECF Nos. 8, 9).

In plaintiff's Opening Brief, plaintiff raises the following arguments: (1) the ALJ erred in rejecting the medical opinions of Rachelle C. Langhofer, Ph.D. and Kristi Breen, Ph.D.; and (2) the ALJ's errors were not harmless (*see* ECF No. 11, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that

which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

## DISCUSSION

### (1) Did the ALJ err in rejecting the medical opinions of Rachelle C. Langhofer, Ph.D. and Kristi Breen, Ph.D.?

Dr. Rachelle C. Langhofer performed a psychological evaluation of plaintiff on August 26, 2010. (Tr. 295). She diagnosed plaintiff with Bipolar Depression type I, R/O Intermittent Explosive Disorder, and R/O Personality Disorder, NOS or Borderline Personality Disorder. *Id*. at 299. She measured plaintiff's GAF score at 48 and opined plaintiff would be markedly limited in the areas of relating appropriately to co-workers and supervisors, responding appropriately to and tolerating the pressures and expectations of a normal work setting, and maintaining appropriate behavior in a work setting. *Id*. at 300.

Dr. Kristi Breen performed a psychological evaluation of plaintiff on June 28, 2011. (Tr. 376-84). She diagnosed plaintiff with Bipolar Disorder and Posttraumatic Stress Disorder and measured plaintiff's GAF score at 50. *Id*. at 378. Dr. Breen opined that plaintiff would be markedly limited in her ability to communicate and perform effectively in a work setting with public contact and with only limited public contact, as well as in her ability to maintain appropriate behavior in a work setting. *Id*. at 379. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.

1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Plaintiff argues that the opinions of Dr. Langhofer and Dr. Breen are uncontradicted and thus the ALJ erred by failing to provide clear and convincing reasons for rejecting the opinions.  ECF No. 11, pp. 4-11.  Neither the ALJ nor defendant specifies any evidence contradicting these opinions.  The only other opinion evidence in the record are the opinions of the state non-examining physicians.  (Tr. 72-93, 96-108). These opinions were not addressed by the ALJ in her decision, and it is not clear to this Court that these opinions contradict the opinions of Dr. Langhofer and Dr. Breen.  Thus, the ALJ was required to set forth clear and convincing reasons for discounting those opinions.

The ALJ provided similar reasons for discounting both of these examining doctor opinions.  First, the ALJ stated that both opinions were "based on a single interview." (Tr. 19).  While this is true, this is not a clear and convincing reason for rejecting the opinions.  By definition, an examining doctor does not have a treatment relationship with the claimant and usually only examines claimant one time.  When considering an examining physician's opinions, it is the quality, not the quantity of the examination that is important. The ALJ did not, for instance, note anything about these examinations that raised issues regarding the reliability of opinions reached – only that they were based on a single interview. Discrediting an opinion because the examining doctor only saw

claimant one time would effectively discredit most, if not all, examining doctor opinions. Therefore, this reason is not a clear and convincing reason for discrediting these opinions.

The ALJ also discounted these opinions finding there to be little to no history of mental health treatment at the time the opinions were rendered. (Tr. 19). Dr. Langhofer's opinion was rendered in August 2010, and Dr. Breen's opinion was rendered in June 2011. (Tr. 295-302; 376-84). While plaintiff admits that she was not receiving mental health treatment when she was examined by Dr. Langhofer in August, 2010 (ECF No. 11, p. 4), as pointed out by plaintiff, and uncontested by defendant, the record shows that plaintiff began treatment on September 14, 2010 – one month after Dr. Langhofer examined plaintiff and eight months before Dr. Breen's examination. (Tr. 303-08). Between August of 2010 and June of 2011, medical records from SeaMar repeatedly mention that plaintiff was regularly seeing a behavioral health counselor and taking prescription medications for her condition. (Tr. 343-45, 357-59, 362-63, 367-71). This is consistent with plaintiff's testimony at the hearing that she had been taking mental health medications for almost a year and was receiving counseling. (Tr. 47-52). This is also consistent with plaintiff's statements to Dr. Breen regarding when she started receiving mental health treatment. (Tr. 376). The ALJ appears to make a distinction between "formal" and "informal" mental health treatment, however, as pointed out by plaintiff, it is unclear what is meant by this or what relevance it has in evaluating the examining doctor opinions. (Tr. 19; ECF No. 11, p. 8). The ALJ fails to provide substantial evidence to support her finding that the plaintiff had "little history of treatment" at the time when Dr. Breen evaluated the plaintiff. (Tr. 19).

Furthermore, neither the ALJ, nor the Administration has provided an explanation regarding why the plaintiff's lack of treatment would provide a clear and convincing reason to discredit these psychologists' opinion. (Tr. 19).

According to the Ninth Circuit, "the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a physician's] assessment of claimant's condition is inaccurate." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). The court noted that "it is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Id.* (citation omitted); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). The same can be said of many other mental illnesses – those afflicted may not recognize the need for treatment.

Although it is often the case that a claimant's failure to comply with prescribed treatment calls into question the severity of the claimant's symptoms, this generally is because such failure suggests that the claimant willfully is failing to submit to medical treatment because he or she wishes to remain disabled and receive benefits, or because he or she is not suffering from that severe of an impairment if not doing everything possible to remedy it. *See* 20 C.F.R. § 404.1530 ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled"). The same is not necessarily true of those with mental illness. *See, e.g., Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). "'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Id.* (*quoting* with approval,

*Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).  In this case, it is significant that plaintiff sought treatment shortly after Dr. Langhofer recommended treatment – indicating that plaintiff followed recommendations for treatment shortly after being advised to do so.

According to Social Security Ruling, (hereinafter "SSR"), SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7, 1996 SSR LEXIS 4, at *22;

There is no substantial evidence indicating that the ALJ did so here. The ALJ failed to explain why plaintiff's lack of treatment is a clear and convincing reason for discounting Dr. Langhofer's opinion and inaccurately stated that plaintiff had "little history of treatment" in discounting Dr. Breen's opinion.

Another reason the ALJ gave for discrediting these opinions was because they were "mostly based on the claimant's self-reports" and the plaintiff was found to lack credibility.  (Tr. 19).  Because these psychologists were reporting on plaintiff's mental health, by the very nature of the type of evaluation, they are based largely on claimant's self reporting.  That does not mean that the examinations are invalid.

For instance, each of these psychologists conducted a Mental Status Examination ("MSE")(Tr. 295, 300, 381-82) based entirely on plaintiff's self reporting. The MSE generally is conducted by medical professionals skilled and experienced in psychology

and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993).  A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Trzepacz, *supra*, The Psychiatric Mental Status Examination 3.  All of this is still based on plaintiff's "self-report", yet does not provided a clear and convincing reason in this instance for rejecting the psychologists' opinions.

In addition to the MSE, both Dr. Breen and Dr. Langhofer performed a battery of tests before rendering their opinions, including REY malingering testing, the Beck Depression Inventory, and the Beck Anxiety Inventory.  (Tr. 380-84).  Further, both doctors noted observing some of the plaintiff's reported symptoms during the examinations.  (Tr. 297, 377).  The ALJ failed to provide any evidence to support her

assertion that these opinions were based "to a large extent" on plaintiff's self-reported symptoms.

Finally, the ALJ provided other specific reasons for discrediting each opinion. In regards to Dr. Breen's opinion, the ALJ noted that plaintiff reported she was able to take care of her activities of daily living. (Tr. 19). While an ALJ may properly reject an opinion if it appears inconsistent with the claimant's level of activities, here, the ALJ fails to provide any explanation of how plaintiff's activities are inconsistent with Dr. Breen's opinion. *See Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001).

The ALJ also notes, as a reason for discrediting Dr. Breen's opinion, that, "Dr. Breen does not seem to take into account that claimant was able to leave her home to go to appointments and once there, the record reflects that she was generally able to function appropriately" (Tr. 19). Again, the ALJ provides no explanation or support for this conclusion. Dr. Breen noted multiple times that plaintiff was attending counseling, which would seem to show she was aware of and took into consideration the fact that the plaintiff was able to attend her appointments (Tr. 376, 379). Further, plaintiff points out several instances when plaintiff was not able to behave appropriately during her appointments. (ECF No. 11 p. 10; Tr. 367, 369, 381, 297). In summary, the ALJ failed to provide clear and convincing reasons for discrediting the opinion of Dr. Breen.

In regards to the opinion of Dr. Langhofer, the ALJ lists several statements regarding plaintiff's use of alcohol and past work history that appear to be inconsistent with the record. (Tr. 19). While not directly stated, the ALJ seems to imply that these statements show plaintiff's lack of credibility. While there may be reasons to discount

plaintiff's credibility, without further explanation, these are not necessarily clear and convincing reasons to discount Dr. Langhofer's opinion, which was based on a battery of tests and personal observations.

The ALJ also noted that the plaintiff reported her mental health symptoms began ten years prior to the date of the evaluation. (Tr. 19). The ALJ reasons that this demonstrates plaintiff was able to work successfully with her symptoms (*id.*). Plaintiff, however, did not report that her symptoms were at the same level of severity for the past ten years. In fact, she testified that her symptoms worsened significantly after she cut back on drinking alcohol in May 2010 --just two months prior to her alleged onset date. (Tr. 39).

Finally, the ALJ discredits Dr. Langhofer's opinion stating that it is inconsistent with her medical source statement. (Tr. 19). Again, neither the ALJ nor the Administration provided any explanation of the alleged inconsistency. In the medical source statement Dr. Langhofer wrote, "She appeared capable of moderate labor or easy clerical work." (Tr. 300). The doctor does not specify whether he believed plaintiff would be capable of doing this work on a full time, consistent basis. In fact, later statements from Dr. Langhofer seem to imply the opposite. When asked whether plaintiff's mental impairments would affect her "ability to work for pay in a regular and predictable manner" Dr. Langhofer stated, "[w]ith therapy and medications she is likely to be able to work" (Tr. 301). This statement is a prognosis of plaintiff's future functioning, and seems to indicate that, in her current condition, she would not be capable of work. The ALJ's statement that the medical source statement is inconsistent, without

providing further explanation, does not constitute a clear and convincing reason to discredit Dr. Langhofer's opinion.

**(2) Was the ALJ's error harmless.**

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Court noted multiple instances of the application of these principles. *Id.* (collecting cases). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

In this case, the ALJ did not incorporate all opined limitations from Dr. Langhofer and Dr. Breen into the RFC finding.  Had these opinions been given weight, the disability determination may very well change.  In fact, Dr. Breen specifically stated that plaintiff "is not capable of work at this time because she has too much difficulty leaving the house."  (Tr. 379).  The ALJ's error in failing to properly evaluate the medical evidence

is not harmless error and the opinions of Dr. Langhofer and Dr. Breen should be reevaluated following remand of this matter.

## CONCLUSION

The ALJ failed to provide clear and convincing reasons for discrediting the opinion of two examining sources that may have changed the disability determination. .

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration.  **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on May 23**,** 2014, as noted in the caption.

Dated this 29th day of April, 2014.

_____

J. Richard Creatura
United States Magistrate Judge